United States District Court
Southern District of Texas
**ENTERED**
August 13, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **GABRIEL ARZATE LABRADOR,** | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-01197** |
| | § | |
| **MARCOS CHARLES, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Gabriel Arzate Labrador's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Motion to Dismiss, (Dkt. 6), is **DENIED**. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release no more restrictive than those in place prior to his redetention, and to submit a status report to the Court confirming Petitioner's release within 48 hours of the issuance of this Order.

## Background

### A. Factual Background

Petitioner is a native and citizen of Mexico. (Dkt. 1 at 6.) He first entered the United States in 2007. (*Id.*) At the time, he was placed into expedited removal and removed from the United

States to Mexico in March of 2007. (*Id.* at 6, Attach. 3 at 2; Dkt. 6 at 2, Attach. 2 at 2.)[1] Petitioner reentered the United States as a victim of human trafficking in 2012. (Dkt. 1 at 6.) In February of 2012, Petitioner was again removed to Mexico after the Government reinstated his removal order from 2007. (*See* Dkt. 6 at 2, Attach. 2 at 2.) Shortly after, Petitioner reentered the United States in or around May of 2012 and has remained in the United States since. (*See* Dkt. 1 at 6; Dkt. 6, Attach. 2 at 2.) On or about July 24, 2023, immigration authorities apprehended Petitioner and reinstated his prior order of removal under 8 U.S.C. § 1231(a)(5). (Dkt. 1 at 7, Attach. 6 at 2.) While in immigration custody, an asylum officer conducted a reasonable fear interview and determined that Petitioner established a reasonable fear of persecution. (Dkt. 1 at 7, Attach. 4; Dkt. 6 at 2.) Thereafter, Petitioner was referred to withholding-only proceedings and filed applications for withholding of removal pursuant to the Immigration and Nationality Act (INA) § 241(b)(3) and protection under the Convention Against Torture (CAT). (Dkt. 1 at 7; Dkt. 6 at 2.) On December 14, 2023, the Immigration Judge (IJ) denied Petitioner's applications for withholding of removal and CAT protection. (Dkt. 1 at 7.) Petitioner timely appealed that decision to the Board of Immigration Appeals (BIA). (*Id.*)

On April 16, 2024, ICE released Petitioner from immigration custody on an Order of Supervision (OSUP). (*See* Dkt. 1 at 7, Attach. 9 at 2.) While released on his OSUP, the BIA dismissed Petitioner's appeal in part and remanded the matter to the Immigration Court for further proceedings and factual findings on July 5, 2024. (Dkt. 1 at 8.) Ten months after his release, Petitioner was redetained by ICE when he appeared for a scheduled reporting appointment at the Krome North Service Processing Center in Miami, Florida on February 19, 2025. (*Id.*; Dkt. 6 at

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

2.) On September 8, 2025, an IJ denied Petitioner's applications for relief following the BIA's remand. (Dkt. 1 at 8–9; Dkt. 6 at 2, Attach. 1.) Petitioner appealed the IJ's decision regarding withholding of removal to the BIA and the decision remains pending. (Dkt. 1 at 8–9; Dkt. 6 at 2.) On or about September 27, 2025, ICE transferred Petitioner to the Webb County Detention Center in Laredo, Texas, where he remains detained. (Dkt. 1 at 9.)

**B. Procedural Background**

Petitioner filed his Petition for Writ of Habeas Corpus on July 2, 2026. (Dkt. 1.) Petitioner argues that his detention under 8 U.S.C. § 1231(a)(6) is unlawful and in violation of the INA and the Fifth Amendment Due Process Clause. (*Id.* at 18–21.) Specifically, he claims that his current detention after he was released on an OSUP in April of 2024 and complied with all reporting requirements violates his due process rights. (*Id.* at 11–13.) He asks the Court to order his immediate release from custody or, alternatively, order an individualized custody hearing. (*Id.* at 22.) The Court ordered Respondents to respond to Petitioner's petition on or before July 13, 2026. (Dkt. 5.) Respondents filed a timely response and Motion to Dismiss arguing that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) pursuant to his reinstated removal order. (Dkt. 6.) Respondents claim that Petitioner's detention does not violate due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because the Government has discretion to continue to detain Petitioner beyond the removal period. (*See* Dkt. 6 at 2–4) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021)).

## Legal Standard

**A. 28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of

habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas*, 533 U.S. at 687. Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id.* (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

**<u>Discussion</u>**

On February 19, 2025, after living in the United States on an OSUP for ten months, Petitioner was abruptly taken into custody. (*See* Dkt. 1 at 8.) The Court considers Petitioner's claim that his current detention is unlawful under the Fifth Amendment's Due Process Clause.[2] Petitioner argues that he was detained despite his compliance with all requirements of his OSUP and without "any meaningful notice, individualized determination, or opportunity to be heard." (*Id.* at 11.) In

[2] As an initial matter, the Court has jurisdiction to hear Petitioner's claims challenging the lawfulness of his redetention by ICE. *See Nguyen v. Noem*, 2026 WL 237282, at *5–6 (S.D. Tex. Jan. 28, 2026) (analyzing the Court's jurisdiction to hear such claims); *see also Pham v. Bondi*, 2026 WL 969962, at *5 (S.D. Tex. Jan. 9, 2026) (citations omitted) ("The Court unquestionably has jurisdiction to review [Petitioner's] claims that the respondents have violated his statutory and constitutional rights to due process by re-detaining him.").

order to decide Petitioner's claim, the Court first evaluates which statute and regulations govern Petitioner's redetention before analyzing whether Respondents violated the applicable regulations by not providing Petitioner with the required process. Finding that Respondents violated the governing regulations, the Court then turns to the scope of relief that the Court should grant.

**A. Federal Regulations Govern Petitioner's Revocation**

Section 1231 generally governs detention and supervision of a noncitizen subject to a "final order of removal." 8 U.S.C. § 1231. Petitioner was ordered removed in 2007, and that order of removal was reinstated in 2023. (Dkt. 6, Attach. 3 at 29.) Because he was subject to a final removal order, his detention at that time was governed by 8 U.S.C. § 1231 and he was released on his OSUP under the corresponding regulations. *See* 8 U.S.C. § 1231; 8 C.F.R. Part 241 ("Apprehension and Detention of Aliens Ordered Removed"). These regulations provide that the "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part." 8 C.F.R. § 241.8(f). Therefore, the Court finds that this Part of the regulations applied to Petitioner at the time he was redetained and his OSUP was revoked in February of 2025. *See Galdamez v. Noem*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 6–7 (S.D. Tex. Jan. 30, 2026) (finding that 8 C.F.R. Part 241 applied to the petitioner with a reinstated removal order when he was redetained and his OSUP was revoked).

Once a noncitizen subject to a removal order has been released from detention on an order of supervision, 8 C.F.R. Part 241 outlines the required procedures for when the noncitizen may be redetained and their supervision revoked. *See* 8 C.F.R. § 241.13(i), 241.4(*l*).[3] A noncitizen's

[3] Petitioner's OSUP does not indicate the specific reason that he was released from detention. (*See* Dkt. 1, Attach. 9 at 2.) 8 C.F.R. § 241.13 provides procedures for noncitizens under a final order of removal who DHS has released after it established that there is not a significant likelihood of removal, and 8 C.F.R. § 241.4 provides procedures for noncitizens under a final order of removal

supervision may be revoked by an authorized ICE official if the noncitizen violates any of the conditions of supervision, if it becomes appropriate to enforce a removal order, or when the agency determines that release is no longer appropriate. *See* 8 C.F.R. § 241.13(i), 241.4(*l*)(1), (2). However, the regulations are also clear that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release. [DHS] will conduct an initial informal interview promptly after his or her return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" and "[t]he alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(2); *see also* 8 C.F.R. § 241.4(*l*)(1) (outlining similar procedures). Thus, given Petitioner was subject to a final order of removal when he was redetained in February of 2025, ICE was required to comply with these procedures in order to redetain him.[4]

**B. Respondents Did Not Comply with the Proper Revocation Procedures**

Having established that Respondents were bound by the regulations for revocation of supervision outlined in 8 C.F.R. Part 241 when they redetained Petitioner in February of 2025, the Court turns to whether Respondents complied with those regulations. First, there is no indication that an Executive Commissioner, ICE's District Director, or a designee, authorized Petitioner's redetention as required by the regulations. *See Nguyen v. Noem*, 2026 WL 237282, at *9 (S.D.

---

who DHS has released after determining that they do not pose a danger or a flight risk. Both require DHS to follow similar specified procedures for revocation of release.

[4] Respondents do not make any argument that Petitioner was not entitled to these regulatory procedures. (*See generally* Dkt. 6.) Instead, they focus only on the authority to detain noncitizens subject to final orders of removal under the limit on indefinite detention established in *Zadvydas*, 533 U.S. 678. (*Id.*) While Petitioner challenges his detention as prolonged, he also independently challenges Respondents' revocation of his OSUP and his subsequent detention without any regulatory procedures on due process grounds. (*See* Dkt. 1 at 11–13.)

Tex. Jan. 28, 2026) (citing 8 C.F.R. 241.4(*l*)(2) ("absent a specific violation of the conditions of release, only designated, high-level ICE officials are authorized to revoke an [Order of Supervision] (including for the purpose of effectuating removal), namely the Executive Associate Commissioner"); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 694 (S.D. Tex. 2025) ("[O]nly two officials have the authority to revoke an Order of Supervision."). "In the absence of some evidence showing that [Petitioner's] Order of Supervision was lawfully revoked by someone with the authority to do so . . . [Respondents have] failed to show that [they] afforded [Petitioner] with due process in connection with the purported revocation of his Order of Supervision." *See id.* at 699–700. Second, there is no evidence that Petitioner was provided notice and the reason for his detention. Petitioner argues that he was not given notice, and Respondents do not argue otherwise. (*See* Dkt. 1 at 11; Dkt. 6.) Finally, there is no evidence that Petitioner was given an interview or any opportunity to be heard prior to or shortly after being redetained as required by the regulations. *See* 8 C.F.R. § 241.13(i)(3) ("The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision."); *see also* 8 C.F.R. § 241.4(*l*)(1) ("The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.").

Indeed, Respondents do not contest Petitioner's arguments regarding his OSUP revocation or attempt to claim that they complied with any applicable regulations when redetaining Petitioner. (*See generally* Dkt. 6.) Accordingly, it is clear that Respondents did not comply with the proper

revocation procedures when redetaining Petitioner after he lived at liberty in the United States for ten months in compliance with his supervision requirements. As such, the Court finds that Petitioner did not receive the procedural due process he was entitled to under the regulations before the revocation of his OSUP. *See Galdamez*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 8 (holding that the government failed to follow the regulations before revoking the petitioner's OSUP in violation of the petitioner's rights to procedural due process under the regulations).

**C. Immediate Release is the Appropriate Remedy**

As Respondents failed to follow the governing regulations, the Court turns to the question of what relief is warranted. The Supreme Court has held that executive agencies are bound by their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Gulf States Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 579 F.2d 1298, 1308 (5th Cir. 1978) (citations omitted) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *see also Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959); *Accardi,* 347 U.S. 260; *Bridges v. Wixon,* 326 U.S. 135 (1945) ("Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged."). In some contexts, courts have held that a violation of the regulations alone does not necessarily warrant relief unless there is a showing of prejudice. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 177 (3d Cir. 2010) (citations omitted) (explaining that "[c]ourts have taken diverse approaches to reconciling the tension between [*Am. Farm Lines v. Black Ball Freight Service,* 397 U.S. 532 (1970) in which the Supreme Court first required a showing of prejudice] and *Accardi*, some imposing explicit prejudice requirements"); *see, e.g., Shave v. Apfel*, 238 F.3d

592, 596–97 (5th Cir. 2001) (requiring a showing of prejudice in the context of evaluating the social security administration's violation of its own internal procedures); *McKoy v. Fox*, 587 F. App'x. 802, 804–05 (5th Cir. 2014) (citations omitted) (requiring that a prisoner "establish that he was prejudiced by the constitutional violation to obtain habeas relief.").

However, the Court finds that the relevant regulations afford imperative procedural safeguards to noncitizens such as Petitioner and that failure to comply with those regulations is prejudicial. *See Ortiz-Garcia v. Warden of Webb County Detention Center*, Civ. No. 5:26-cv-00399, Dkt. No. 14 at 11–12 (S.D. Tex. July 15, 2026) (evaluating whether a petitioner is prejudiced by the government's failure to provide him with the process required by the governing revocation regulations outlined in 8 C.F.R. Part 241); *see also Rodriguez Romero v. Ladwig*, 2026 WL 321437, at *9 (M.D. La. Feb. 6, 2026) (finding that "[m]ultiple courts within this circuit and throughout the country, being faced with fact patterns nearly identical to Petitioners', have considered the regulations discussed above and found" that where the governing regulations are intended to provide due process, prejudice is presumed). Finding that Petitioner was prejudiced by Respondents' failure to comply with the revocation regulations, the Court addresses the appropriate remedy.

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Accordingly, the Court finds that where Respondents unlawfully detained Petitioner, the appropriate relief is Petitioner's immediate release from detention. *See Ortiz-Garcia*, Civ. No. 5:26-cv-00399, Dkt. No. 14 at 13–14; *see also Rodriguez Romero*, 2026 WL 321437, at *17 (collecting cases) ("As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (citing 28 U.S.C. §

2241(c)(3)) ("Because [Petitioner] is 'in custody in violation of the . . . laws . . . of the United States,' he is entitled to habeas relief."); *Villanueva*, 801 F. Supp. 3d at 705 (ordering the petitioner's immediate release after considering the factors set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) and finding "that the balance of the factors establishes that the government violated [petitioner's] due process rights by re-detaining him without complying with its own regulations and the law"); *Galdamez*, Civ. No. 5:25-cv-252, Dkt. No. 22 at 6 (same). The Court agrees with the many courts that have ordered the immediate release of petitioners who have been unlawfully detained after the Government failed to follow the regulations governing redetention and revocation of supervised release for noncitizens subject to a final order of removal.

Thus, the Court holds that because Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment, he is entitled to equitable relief and that the appropriate remedy is Petitioner's immediate release from custody.

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion to Dismiss, (Dkt. 6), is **DENIED**.

Respondents are hereby **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from custody under reasonable conditions of supervision, no more restrictive than those in place when Petitioner was detained in February of 2025. Respondents are **ORDERED** to notify the Court of the status of Petitioner's release **on or before Monday, August 17, 2026**.

Respondents are also **ORDERED** to return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention.

It is further **ORDERED** that any revocation of Petitioner's OSUP must be made pursuant to the relevant regulations and procedures governing revocation at 8 C.F.R. Part 241.

IT IS SO ORDERED.

SIGNED this August 13, 2026.

Diana Saldaña
United States District Judge